## HALE & KILBURN MFG. CO. v. LEHIGH VALLEY TRACTION CO.

(Circuit Court, E. D. Pennsylvania. December 31, 1903.)

### No. 3.

1. PATENTS—HANDHOLD ON CAR SEATS—ANTICIPATION.
    Davis patent, No. 648,927, relating to certain improvements in the backs of car-seats by the addition of a handhold from the cut-out corner of the seat, intended for the use of passengers compelled to stand in the aisle, *held* not anticipated by McKelvey and Van Beek patent, No. 363,661; Gilfillan patent, No. 436,829; Gilfillan and Emmert patent, No. 421,356; or Stevenson reissued patent, No. 6,429.

2. SAME.
    Where it was claimed that Davis patent, No. 648,927, for handhold on car-seats, was anticipated by Hale patent, No. 626,831, but the patentee testified that before the issuance of the patent to Davis his partner disclosed such handhold to witness, and that witness immediately took steps to put it into commercial use, and the Hale patent made no claim for the seat-back or the handle, which was merely shown in one of the specifica-

tions thereof, the Davis patent thereon subsequently issued was not anticipated by the Hale patent.

**8. SAME—PATENTABLE NOVELTY.**

Davis patent, No. 648,927, for a handhold on the inside corner of carseats, for the benefit of passengers compelled to stand in the aisles of crowded cars, is not void for lack of patentable novelty.

In Equity.

S. O. Edmonds, for complainant.

P. K. Erdman and George H. Knight, for respondent.

J. B. McPHERSON, District Judge. This suit is brought to restrain the infringement of letters patent No. 648,927, applied for on August 6, 1898, and granted on May 8, 1900, of which the complainant is now the owner. The inventor was George H. Davis, and his patent relates to certain improvements in the backs of car-seats. Its subject and scope will perhaps be best understood by examining the following quotation from the specification:

"Much difficulty and annoyance are experienced by the traveling public in crowded railway cars, owing to the lack of satisfactory provision for supporting the passengers standing in the aisles. Street cars are usually provided with pendent hand straps hanging from a rail or support in the top of the car; but such straps are only conveniently placed when the seats extend longitudinally, and are more or less inconvenient, as they necessitate the stretching of the arm upward, and are unsuited to persons of short stature.

"It is an object of my invention to provide a car-seat back with a handpiece or handle suitable to be grasped by the hand of a passenger standing in the aisle, and to furnish the requisite support.

"It is also an object of my invention, in thus providing the seat-back with a supporting handle, to preserve the symmetry of the seat-back, and to avoid the formation of any objectionable extensions or projections which would form obstructions and be liable to engage the apparel of the passengers. * * *

"A is a car-seat back, here shown as a shifting seat-back, carried by shifting side arms, B, B, and adapted to be shifted from one side of the seat-cushion, C, to the other.

"D is the handpiece or handle, carried by the seat-back, and located in an ordinary car-seat at the outer or aisle end, so that it may be grasped by passengers standing in the aisle. In some cases the handle is located at each end of the seat-back. In my preferred construction the corner of the seat-back is cut away or reduced, and the handle is attached at the cut-away or reduced portion, so as to preserve the symmetry of the outline of the seat-back, and not to form any projection or extension therefrom. The preferred form of the handpiece or handle is that shown in the drawings, consisting of an angular casting or metal piece, of which two sides, d, d', form the outer portion, which is grasped by the hand, and the third side, d, constitutes the base, which is fitted upon the face of the cut-away or recessed corner of the seat-back. Extensions, d, of the sides, d, d', form fastening-lugs by which the handle may be secured to the top and side of the seat-back by screws or otherwise, as shown in Fig. 1. The base, d, may be provided with a lug or lugs, d, adapted to engage recesses in the face of the frame of the seat-back to give greater rigidity and lateral strength, and to facilitate the application of the handle. In this construction the sides, d, d', may be fitted snugly against the ends of the boundary-rib, a, of the seat-back, thus forming a substantial continuation thereof, and the corner of the handle may be rounded, as at d, to correspond with the opposite corner of the seat-back, and to render the rest more comfortable to the grasp.

"The details of construction may be varied without departing from the invention, and, if desired, the hand-grasp or handle may be formed by cutting off a corner or portion of the frame of the body of the seat-back and extend-

ing the boundary-rib, a, over the cut-off or recessed portion. as indicated by dotted lines in Fig. 1."

The patent has two claims, both of which are said to be infringed:

"(1) In a car-seat, the combination with a seat-back having a portion of its outer edge cut away or recessed, of a handle or handrest secured to the seat-back at said cut-away or recessed portion and having its outer portion constituting a substantial continuation of the edge of the seat-back.

"(2) The handpiece or handle for a car-seat back consisting of a piece, D, having the two outer sides, d, d', forming an angle with one another, and the inner side, d, extending between and uniting the sides, d, d', and forming a base for attachment to the frame of the car-seat, in combination with a seat-back having its outer corner cut away, and having the base, d, of the handpiece fitted to said cut-away corner with the outer portions, d, d', forming a substantial continuation of the outer edge of the seat-back."

The defenses relied upon are lack of patentable invention and anticipation, for, if the patent is valid, the defendant's structure is so plain an infringement that only slight effort is made to justify it.  In the light of the prior art, however, the other defenses show much more

merit, and I have had a good deal of difficulty in coming to a conclusion. The patent to McKelvey and Van Beek, No. 363,661, granted in May, 1887, and the patents to Gilfillan, No. 436,829, dated September 23, 1890, and to Gilfillan and Emmert, No. 421,356, granted in February, 1890, show a combination of handle and seat that goes far to suggest the construction of the patent in suit. So, too, does the handhold of the Stevenson reissues, especially No. 6,429, dated May 11, 1875, which was expressly intended to furnish "the outer ends of the car-seats with a grab-handle, by means of which to enable the passengers to steady, assist, and support themselves in getting on and off." This object, to provide a support for the passengers, is also the object of the Davis patent, but the situation of the passengers and the mischiefs to be prevented are not the same, so that the results sought to be accomplished are different; and this, with the difference in the means of accomplishing the respective results, is, I think, sufficient to distinguish the two devices patentably. The McKelvey and Van Beek and the two Gilfillan patents do not aim at all to furnish a support for passengers standing in the aisle. Their handles are intended either to enable the seat-back to be more easily shifted, or to support a head-rest; and nowhere in either of the three patents is there any evidence that the handles or brackets were designed to be grasped as a support by the standing passengers, or were even thought of in that connection. Moreover, differences of construction are found here, also, sufficient to differentiate the two distinctly. If these three patents are laid aside, only one of the others that have been offered in evidence needs any discussion. The rest are all in different arts, and, at the best, have only remote relations to the invention now under consideration.

But the Hale patent, No. 626,831, which discloses an exact counterpart of complainant's device, requires a few words. It was applied for on June 11, 1898, and was granted June 13, 1899, both dates being before the corresponding dates of the Davis patent; and, as I have just said, the drawings of the seat-back and handle are precisely alike in each. Moreover, although Hale makes no claim for the seat-back or the handle, the specification has this pertinent paragraph:

"The said back, B, is provided with a handle, K, to support passengers standing in the aisle. This is preferably performed by cutting away the seat-back at one corner and attaching thereto a handle, which thus forms a substantial continuation of the seat-back frame."

Unexplained, this exact likeness would, of course, be fatal to the Davis patent, and undoubtedly the foregoing facts cast upon the complainant the burden of showing by clear and convincing evidence that, in spite of appearances, Davis was entitled to priority of invention. I was at first inclined to think that the testimony offered for this purpose was not sufficient, but further reflection, aided by the supplemental argument upon this point, has satisfied me that Mr. Hale's explanation of how the Davis handle came to appear in his application should be accepted. I quote from his testimony:

"(6) The drawing of the Davis patent and that of the Hale patent appear to show the same construction of seat-back, do they not? A. Yes, sir, they do; exactly.

"(7) Can you explain this? A. Some time prior to the application for my patent, Mr. Ford, a member of the firm of Ford, Bacon & Davis [referred to in the Davis patent], came to me and stated that Mr. Davis had gotten an idea of putting a handle onto the back of a car seat, and he wanted I should make one, which we did; and subsequently he gave us an order, or, rather, it was the result of an order we received for some five hundred of those handles. My application at that time was for a car seat containing a new mechanical movement, and it appears the only reason I can account for the back being in exactly the same shape as that contained in the Davis patent was that this seat containing the new mechanical movement was made up with one of those handles on, and the patent attorney, of course, put it into my specification.

"(8) I observe that there are no claims in the Hale patent, No. 626,831, upon the handle, or the back equipped with the handle, but that these claims seem directed to the operating mechanism, or, as you have called it, 'mechanical movement.' Was this in accordance with your instructions? A. It was.

"(9) As I understand you, the handle shown in patent 626,831 was, prior to the filing of your application for patent 626,831, disclosed to you by Mr. Ford, the partner of the patentee George R. Davis. Am I correct as to that? A. You certainly are.

"(10) When Mr. Ford first disclosed Mr. Davis' invention to you, did you, or did you not, take steps to put it into commercial use? A. I did. I saw there was a big market for such a thing as that, and we immediately took hold of it and put it into commercial use, and received very soon our first order of about five hundred, which have increased until we have made a great many thousands of them."

If this is true—and I accept it as verity—the likeness between the two drawings is satisfactorily accounted for.

Upon the remaining question, whether patentable novelty is disclosed, I am also of opinion that the complainant's position should be sustained    The device has undoubtedly shown itself to be useful, for more than 30,000 seat-backs, equipped with the Davis handles, have been sold in the comparatively short time since the manufacture began, and they have therefore evidently made a place for themselves in the art. The structure certainly is free from many defects of the hanging straps, and, while its range as an invention may not be wide, it seems to be adapted to add distinctly to the comfort and safety of passengers who are obliged to stand in a crowded car. Moreover, the patent was granted after a prolonged struggle and much consideration in the Patent Office, and was only obtained by a decision of the examiners in chief. It was therefore scrutinized with much care, the McKelvey and Gilfillan patents being specially discussed; and, under these circumstances, the usual presumption of validity arising from the grant is, I think, a good deal strengthened. Regarding the case as doubtful—and this is as far as I am able to go with the defendant —this presumption should turn the scale.

The usual decree may be entered in favor of the complainant.